UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CONNIE LOUISE BORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   08-cv-1352 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R  &  O P I N I O N

This matter is before the Court on the parties' cross-motions for Summary Judgment. (Docs. 7 & 9). Plaintiff, Connie Louise Borth, seeks judicial review under 28 U.S.C. § 405(g) of the decision of the Commissioner finding that she is not disabled and thus not eligible for disability benefits. For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted in part and denied in part, and Defendant's Motion for Summary Judgment is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Order & Opinion.

## LEGAL STANDARD

To be entitled to disability benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual

determination. *See McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). The factual determination is made by using a five-step sequential analysis. 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made to determine whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 404.1520(c). If the claimant has an impairment that significantly limits her physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the elements of a Listing are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. § 404.1520(d).

If the claimant does not qualify under one of the listed impairments at Step Three, the Commissioner proceeds to the fourth and fifth steps. At the fourth step, the claimant's Residual Functional Capacity ("RFC") is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. § 404.1520(e)-(f). If she cannot, then, at Step Five, the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. § 404.1520(g).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g), which provides, in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The claimant has the burden to prove disability through Step Four of the analysis, *i.e.*, she must demonstrate an impairment that is of sufficient severity to preclude her from pursuing her past work. *McNeil*, 614 F.2d at 145. However, once the claimant shows an inability to perform her past work, the burden shifts to the Commissioner, at Step Five, to show the claimant is able to engage in some other type of substantial gainful employment. *Id.*

A court's function on review is not to try the case de novo or to supplant the decision of the Administrative Law Judge ("ALJ") with the Court's own assessment of the evidence. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and "may not decide the facts anew, reweigh the evidence, or substitute [its] own judgment" for that of the ALJ. *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed "so long as they find some support in the record and are not patently wrong." *See Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence . . . and to enable us to trace the path of [his]

reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**BACKGROUND**[1]

**I. Procedural History**

On August 2, 2006,[2] Plaintiff filed for disability insurance benefits, alleging an onset of disability on March 9, 2000, as a result of multiple knee surgeries and depression. (Tr. 151-56). On September 7, 2006, Plaintiff's claim was denied, pursuant to the September 1, 2006 opinion of Dr. Sandra Bilinsky, a state agency medical consultant, that Plaintiff could work at the light exertional level with some limitations. (Tr. 64, 959-66). Plaintiff requested reconsideration of this denial, and, on October 24, 2006, Dr. Frank Norbury, another state agency medical consultant, filled out a "Request for Medical Advice" form, which appears to indicate that he concurred in the decision proposed by the disability examiner that Plaintiff met Listing 1.03, with an onset date of November 30, 2005.[3] (Tr. 967-69). On October 27, 2006, the agency affirmed the earlier determination that Plaintiff was not disabled. (Tr. 65, 99-102).

---

[1] Contrary to the Court's usual practice in Social Security appeals, Plaintiff's medical history and the hearing testimony before the ALJ are not reviewed in this Order & Opinion. This is so because the resolution turns on an issue of law that does not directly implicate either of these portions of the case's background.

[2] Plaintiff's application for disability insurance benefits bears the date of August 2, 2006. (Tr. 151-56). However, both the Commissioner's brief and the ALJ's opinion give the dates of July 18, 2006. (Tr. 81; Doc. 10 at 1). Ultimately, this date is irrelevant to the disposition of this appeal, but the Court will rely on the date found on the application itself.

[3] The interpretation of this form is discussed further below.

4

After the state agency informed Plaintiff that her claim was denied, on November 8, 2006, Plaintiff requested a hearing before an ALJ. (Tr. 64-65, 91-104). On April 16, 2008, ALJ David W. Thompson held a hearing on Plaintiff's case. (Tr. 13-63). Plaintiff was represented by an attorney at this hearing. On May 16, 2008, the ALJ issued his amended decision, in which he found that Plaintiff was not disabled as defined in the Social Security Act, as she was still capable of performing her past relevant work.[4] (Tr. 81-90). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 4-17). Plaintiff filed her request for review with this Court on December 1, 2008.

## II. ALJ's Decision

The ALJ issued his amended decision on May 16, 2008. (Tr. 81-90). He found, first, that Plaintiff's earnings records show that she had acquired sufficient quarters of coverage to remain insured through December 31, 2005. Therefore, the period of alleged disability at issue was March 9, 2000 through December 31, 2005. After reviewing the five-step sequential evaluation process, the ALJ found at Step One that Plaintiff did not engage in substantial gainful activity during the relevant period.

At Step Two, the ALJ determined that Plaintiff had the severe impairments of multiple right knee surgeries caused by degenerative joint disease and depression. In so finding, he noted Plaintiff's history of multiple knee procedures,

---

[4] On May 12, 2008, the ALJ issued his first decision in the case, but he amended it on May 16, 2008. (Tr. 66-76). The amended decision replaces the earlier decision.

5

which caused more than a minimal limitation in her ability to perform basic work activities. In addition, he mentioned Plaintiff's treatment for depression and anxiety between May and October 2004, and found that her depression had also caused more than a minimal limitation in her ability to perform basic work activities. The ALJ rejected Plaintiff's claim that low back pain constituted a severe impairment, as her physician had noted that she did not need care for the condition, and as the evidence and testimony did not show that that low back pain caused more than a minimal limitation in Plaintiff's abilities.

The ALJ then turned to Step Three, at which he first determined that Plaintiff's knee impairments did not meet Listing 1.03, which covers reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. He based this determination on his finding that Plaintiff had returned to effective ambulation during the relevant period.

The ALJ also determined that Plaintiff's mental impairments did not meet the criteria of Listing 12.04, which concerns affective disorders. In so finding, he considered whether the criteria of Paragraph B of that Listing were met. He found that Plaintiff had only a mild restriction in activities of daily living, since she could care for her own and her grandchild's needs. He also found that she has only a mild restriction in social functioning, as the decrease in her social activities was due to pain and mobility problems, not depression, and as there was no evidence of difficulty in interacting with others. In addition, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, because of the impact of her pain medications on her concentration. Lastly, he found that

Plaintiff had experienced no episodes of decompensation. The ALJ also stated that he had considered the criteria of Paragraph C of the Listing, and found that the evidence failed to establish the presence of Paragraph C criteria. Finally, the ALJ noted that he had incorporated his findings under Paragraphs B and C into his RFC assessment.

According to the ALJ, Plaintiff had the RFC to perform sedentary work, except for the need to stand up for two hours in an eight hour day; to sit for at least six hours in an eight hour day; to deal with only occasional ramps, stairs, balancing, stooping, or crouching; to deal with no ropes, ladders, scaffolds, kneeling, or crawling; to have a sit-stand option to stand for 30 to 40 seconds every so often; and to be limited to moderately complex or detailed tasks. In determining this RFC, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that her statements as to the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC.

In support of his RFC determination, the ALJ reviewed Plaintiff's treatment history for her right knee impairments, and her history of pain treatment. In addition, he found that the evidence and testimony showed that she was able to engage in a range of activities during the relevant period, and found that her credibility was undermined by her ability to engage in these activities. He also noted that "the state agency medical consultants" found that Plaintiff could perform at the light exertional level with certain limitations, but gave little weight to this finding, as they did not have the benefit of Plaintiff's testimony and additional

vocational records he received. Finally, he gave considerable weight to the evidence provided by the treating and evaluating health care providers, because they had provided regular, extensive treatment to Plaintiff.

After finding this RFC, at Step Four the ALJ found that Plaintiff's past relevant work as a payroll clerk, collection clerk, and accounting clerk did not require the performance of activities outside Plaintiff's RFC. The vocational expert had submitted a past relevant work summary, which indicated that each of these jobs were classified as skilled and sedentary, and he had testified at the hearing that they would be compatible with the limitations imposed by the ALJ on Plaintiff's RFC. Plaintiff had described these jobs as being sedentary as she had actually performed them. Therefore, the ALJ determined that Plaintiff could return to these past jobs. As a result of her ability to return to her past work, the ALJ found that Plaintiff was not under a disability during the relevant period.

## DISCUSSION

The primary issue in this case is the October 24, 2006 reconsideration opinion by state agency medical consultant Dr. Frank Norbury, which appears to find that Plaintiff's knee impairment meets Listing 1.03, and the ALJ's consideration of that opinion at Step Three. (Tr. 167-69).

A preliminary issue that must be addressed is Defendant's claim that Plaintiff waived any challenge to the ALJ's analysis of Listing 1.03 and Dr. Norbury's opinion by not specifically raising it before the ALJ.[5] In *Johnson v. Apfel*,

---

[5] The Court notes the seeming impossibility of raising an argument related to the fact that the ALJ did not discuss something in his opinion to the ALJ at the hearing, as the ALJ's opinion is written after the hearing. A plaintiff would have no

8

the Seventh Circuit overruled an earlier line of precedent holding that a claimant's failure to present an issue on appeal from an ALJ to the Appeals Counsel constituted waiver of that issue on judicial review. 189 F.3d 561, 562-63 (7th Cir. 2004). In so doing, it also mentioned *Brewer v. Chater*, in which the claimant had failed to present a particular issue to both the ALJ and to the Appeals Council, and the court held that she had thus waived the issue. 103 F.3d 1384, 1393 (7th Cir. 1997) (*citing Papendick v. Sullivan*, 969 F.2d 298, 302 (7th Cir. 1992) (declining to consider issues not considered by the Appeals Council)). It is apparent that *Brewer* was overruled by *Johnson* to the extent that it held an issue must be presented to the Appeals Council in order to be preserved, but it is less clear from the text of *Johnson* whether an issue must also be explicitly presented to the ALJ to avoid waiver.[6]

The *Johnson* court's discussion of the waiver issue concentrated on the Appeals Council. However, some district courts appear to have interpreted *Johnson* as overruling *Brewer* both in respect to Appeals Council review and to ALJ hearings. *See, e.g., Sayles v. Barnhart*, 03-c-7325, 2004 WL 3008739, *23 fn. 18 (N.D. Ill. Dec. 27, 2004) ("Seventh Circuit overruled *Brewer* on the waiver issue in *Johnson v. Apfel*"). On the other hand, others appear to assume that the waiver

---

way of knowing, during the hearing, what the ALJ would disregard in his opinion. However, as there appears to be some precedent on point, the Court will proceed with this discussion.

[6] Plaintiff's counsel did raise this argument in his brief to the Appeals Council. (Tr. 10).

9

rule is preserved as to issues presented to the ALJ. *See, e.g.*, *Wilkening v. Barnhart*, 02-c-9096, 2004 WL 1005718, *5 fn. 4 (N.D. Ill. Apr. 27, 2004).

Having reviewed the regulations on which the *Johnson* court relied, the Court believes that there has been no waiver of Plaintiff's argument that the ALJ should have considered Dr. Norbury's opinion in this case. First, the limited extent of the sole "waiver" regulation discussed in *Johnson* is equally applicable to hearings before the ALJ. 20 C.F.R. § 404.900(b) ("If you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period, you will lose your right to further administrative review and your right to judicial review, unless you can show us that there was good cause for your failure to make a timely request for review."). Further, *Johnson* also disavowed *Papendick*, which was the only authority relied on by the *Brewer* court. *Johnson*, 189 F.3d at 563. The *Brewer* decision, in turn, was the only precedent cited in *Johnson* for the proposition that an issue can be waived by failing to present it to the ALJ. *Id*. at 562. Thus, the Court of Appeals undermined the *Brewer* holding by overruling the authority on which it was based.

Finally, the Court does not find that consideration of a piece of evidence in the record, such as the opinion of a reviewing physician, is an "issue" that can be waived by failure to explicitly bring it to the ALJ's attention during the hearing. If this were so, the claimant would have to mention every piece of evidence and doctor's opinion on which she wishes the ALJ to base a decision in her favor at the hearing, which obviously does not happen and would be impracticable. As noted in 20 C.F.R. § 404.900(b), at "each step of the review process, you [the claimant] *may*

present any information you feel is helpful to your case. …[W]e will consider at each step of the review process any information you present *as well as* all the information in our records." (emphasis added). The ALJ had the duty to consider all the evidence, whether or not Plaintiff brought it to his attention. Thus, it was not necessary in this case for Plaintiff to explicitly mention each piece of favorable evidence to the ALJ at the hearing in order to avoid waiver.

Turning to the merits of the argument, Plaintiff claims that the ALJ erred in failing to consider the opinion of Dr. Norbury in determining that she did not meet Listing 1.03, since Dr. Norbury was a state agency physician who found her to have met the Listing. She argues that the ALJ was at least required to discuss and give reasons for his rejection of Dr. Norbury's opinion under Social Security Ruling 96-6p. Defendant counters that Dr. Norbury's opinion, contrary to Plaintiff's assertions, did not find Plaintiff to have met Listing 1.03, but instead affirmed the earlier state agency decision of Dr. Sandra Bilinsky, who found that Plaintiff did not meet the Listing.

On October 24, 2006, Dr. Norbury completed a form entitled "Illinois Request for Medical Advice." (Tr. 967-69). The form is set up such that a disability examiner lists the allegations of disability made by the claimant, then in Section 1 suggests a proposed decision to the medical reviewer. In Section 7 of the form, the disability examiner, here Grisela Torregrosa, explains the reasoning behind the proposed decision.[7] In Section 1, Ms. Torregrosa proposed the decision of "The

---

[7] Plaintiff appears to assume that the "Allegations" section of the form was completed by Dr. Norbury. (Doc. 7 at 4). The use of the term "allegations" implies that the section contains the claimant's claimed impairments, not the physician's

claimant's condition meets listing 1.03. The onset of disability will be set as 11/30/05."[8] The box in which this proposed decision is set out instructs: "Please review and if you concur, check the box in Section 6 and sign and date this form." Dr. Norbury made no other marks on the form except to check the box in Section 6 and electronically sign and date the form. Thus, it appears from a plain reading of the form and Dr. Norbury's completion of it that he concurred with Ms. Torregrosa's proposed decision, that Plaintiff met Listing 1.03.

Defendant contends that Dr. Norbury merely "inadvertently" failed to fill out the rest of the form (Sections 2-5), which would have indicated his disagreement with the proposed decision. However, the form does not read this way -- it appears that only when a physician disagrees with the proposed decision or has other issues or questions does he need to complete Sections 2-5. Section 1 plainly directs the physician straight to Section 6 if he agrees with the proposed decision; there is no instruction that he is to fill out Sections 2-5 in addition. Further, to assume that Dr. Norbury's decision to leave Sections 2-5 blank was inadvertent is merely speculation in the face of the plain reading of the form, which indicates his agreement with the proposed decision.

---

conclusions. However, the resolution of this question is not relevant to the outcome of this appeal.

[8] In her explanation of the proposed decision, Ms. Torregrosa stated that Plaintiff had worked at substantial gainful activity levels until November 30, 2005, which finding she used to set the onset date. The parties do not discuss this setting of the onset date, which appears to be incorrect given the ALJ's finding that Plaintiff's five days of work after March 9, 2000 did not amount to substantial gainful activity. As the "substantial gainful activity" determination is one that is not dependent on the medical record, the Court defers to the ALJ's determination that she had not engaged in substantial gainful activity after March 2000.

Defendant also argues that, when all of the state agency forms are read together, "it is clear that Dr. Norbury did not opine that Plaintiff was disabled at step three, but instead adopted the prior State Agency conclusion." In support of this argument, Defendant cites the September 2006 evaluation by Dr. Sandra Bilinsky, who found that Plaintiff not disabled, as she could work at the light exertional level with some limitations. (Tr. 959-66). Defendant also notes the fact that on the October 27, 2006 "Determination and Transmittal" form, Ms. Torregrosa made a notation that Dr. Norbury adopted the prior opinion. (Tr. 65). Finally, Defendant cites the October 27, 2006 Reconsideration Letter mailed to Plaintiff by James Martin, Regional Commissioner of Social Security, which states that the Administration has found that the previous determination denying Plaintiff's claim was proper under the law. (Tr. 99-102).

In the face of the form actually completed by Dr. Norbury, none of these documents, viewed separately or together, shows that Dr. Norbury adopted the prior determination. The evaluation by Dr. Bilinsky simply shows that she had previously found Plaintiff to be not disabled, not that Dr. Norbury agreed with her conclusion; indeed, Dr. Norbury did not even reach the question of Plaintiff's RFC, since he apparently agreed with the proposed decision that she met Listing 1.03. The October 27, 2006 forms likewise do not undermine the clear interpretation of Dr. Norbury's actions in filling out the "Request for Medical Advice" form. They appear to indicate that Ms. Torregrosa and Mr. Martin misunderstood Dr. Norbury's handling of the form. At the most, they indicate some uncertainty within the agency as to Dr. Norbury's actual determination -- perhaps Dr. Norbury

13

intended to affirm the earlier ruling, communicated this to others in the agency, but made a mistake in filling out the form. However, the Court will not engage in speculation as to what Dr. Norbury actually meant when the form he filled out appears to be clear.

In his opinion, the ALJ discussed whether Plaintiff met Listing 1.03 only briefly. Listing 1.03 requires "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."[9] 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(B)(2)(b)(2). The ALJ stated only that Plaintiff "had returned to effective ambulation during the period of March 2000 through December 31, 2005." (Tr. 84). He did not discuss either of the state agency evaluations of Plaintiff, nor any other evidence from the objective medical record or Plaintiff's testimony.

---

[9] The explanation continues, "They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(B)(2)(b)(2). Further, the explanation provides that "[p]ain…may be an important factor contributing to functional loss. …It is, therefore, important to evaluate the intensity and persistence of such pain or other symptoms carefully in order to determine their impact on the individual's functioning under these listings." *Id*. at 1.00(B)(2)(d).

Though the ALJ was not required to accept Dr. Norbury's finding the Plaintiff met Listing 1.03, he was required to discuss the weight he gave to that determination. In cases at the ALJ level, the responsibility for determining whether a claimant's impairments meets a particular Listing lies with the ALJ; the ALJ is not bound by the findings of the state agency consultant. 20 C.F.R. §§ 404.1526(e), 404.1527(f)(2)(i). However, the "administrative law judge *must explain* in the decision the weight given to the opinions of a State agency medical or psychological consultant."[10] 20 C.F.R. § 404.1527(f)(2)(iii) (emphasis added); *see also* Social Security Rulings 96-6p & 96-5p. The factors listed in 20 C.F.R. § 404.1527(d) must be applied to evaluate the opinion of a medical source on an issue reserved to the Commissioner, including whether a claimant's impairments meet the requirements of a Listing. 20 C.F.R. § 404.1527(f)(2); Social Security Ruling 96-5p.

Here, the ALJ did not explain what weight he gave to either of the state agency evaluations when he determined that Plaintiff did not meet Listing 1.03 at Step Three.[11] This is in clear violation of the regulations concerning an ALJ's

---

[10] This rule applies "unless the treating source's opinion is given controlling weight." 20 C.F.R. § 404.1527(f)(2)(iii). As a treating source's opinion cannot be given controlling weight as to the issues reserved to the Commissioner, such as whether a claimant's impairments meet a Listing, whether a treating source's opinion was given controlling weight is not relevant at Step Three. Social Security Ruling 96.5p. In addition, the ALJ here did not indicate that he gave controlling weight to a treating source opinion at Step Three.

[11] Later in his opinion, the ALJ indicates that he gave "little weight" to the opinions of the state agency medical consultants, which found that Plaintiff was able to perform at the light exertional level with certain postural limitations, as "the state agency did not have the benefit of the testimony received at the oral hearing and the additional vocational records received into the record." (Tr. 89).

15

treatment of opinion evidence from medical sources on this type of issue. Indeed, Defendant offers no argument that the ALJ did not have to evaluate Dr. Norbury's opinion, choosing instead to rely on the argument, discussed above, that Dr. Norbury intended to adopt Dr. Bilinsky's findings.

Where the ALJ has failed to follow relevant Social Security regulations, he has failed to apply the correct legal standard to the case, which is an error of law. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991). As the ALJ made an error of law under the regulations in his evaluation at Step Three, that decision must be reversed.[12] *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980) ("When the Secretary…commits an error of law, reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings."). Accordingly, this matter must be remanded to the agency for a proper evaluation of the weight given to the relevant medical opinion evidence at Step Three.

The Court has considered whether this could be considered a "harmless" error, and has determined that, in these circumstances, it cannot. The Seventh

---

However, this evaluation applied to the ALJ's determination of Plaintiff's RFC, not his evaluation of the state agency opinion on the application of Listing 1.03 to Plaintiff's condition. Further, the ALJ appears to be referring in this statement to the September 2006 evaluation of Dr. Bilinsky, which found Plaintiff to be able to function at the light exertional level with certain postural restrictions, rather than to the later opinion of Dr. Norbury, which appears to adopt the proposed decision that Plaintiff meets Listing 1.03.

[12] The parties' arguments relating to the ALJ's determination of Plaintiff's RFC and at Step Four are not considered, as this case must be remanded at Step Three, where it may end. For the Court to now decide whether the ALJ's opinion was proper at later steps would be to render an improper advisory opinion.

Circuit has held that the doctrine of harmless error is applicable to Social Security appeals.[13] *See, e.g.*, *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003). "Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits." *Kolesar v. Shalala*, 93-c-3834, 1994 WL 30544, *11 (N.D. Ill. Feb. 3, 1994). In this case, though, the Court cannot determine whether consideration of Dr. Norbury's opinion would have changed the outcome of the ALJ's decision at Step Three, as he does not explain what evidence he relied on in coming to the decision that Plaintiff had returned to effective ambulation during the relevant period. Further, he does not state his finding as to when Plaintiff returned to effective ambulation, and the Listing requires only that she have been unable to effectively ambulate for one year, or that she be expected to not regain effective amubulation within one year after a surgery; Plaintiff had reconstructive surgery on her knee in 2003. 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.03 ("return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."). (Tr. 670, 676-78, 682). Plaintiff's alleged disability covers a span of nearly five years, during which there is some evidence in the record that she gained and

---

[13] Recognized "harmless errors" include the ALJ's reliance on interim regulations, where the correct regulations were substantially the same as the interim regulation such that it was clear the ALJ's factual determination would have been the same under either, *Keys*, 347 F.3d at 994; the ALJ's failure to specifically include obesity as a limitation, where the ALJ relied on the reports of physicians who had noted the claimant's obesity, *Prochaska v. Barnhart*, 454 F.3d 731, 737-37 (7th Cir. 2006); and the ALJ's failure to credit a doctor's opinion, where the ALJ included the limitation proposed by that doctor in his hypotheticals to the ALJ, *Bacidore v. Barnhart*, 01-c-4874, 2002 WL 1906667, *12 (N.D. Ill. Aug. 19, 2002. Each of these is distinguishable from the instant case, as they all involve situations where it was clear that the ALJ's determination would not have been different without the error, and that the ALJ's determination in fact included, in some other way, the required analysis.

17

lost effective ambulation, including her own testimony. The ALJ failed to specify whether Plaintiff was unable to ambulate effectively for any one-year period following a knee surgery during the relevant period.

In order to find that the ALJ's decision would have been the same even if he had considered Dr. Norbury's opinion as required -- that the error was "harmless" -- the Court might surmise from the ALJ's discussion of Plaintiff's RFC that the ALJ found Plaintiff's testimony that she could not walk more than forty-five feet; that she could not walk on uneven terrain; that she occasionally used a walker, and always used either it or a cane during the relevant period; that she had difficulty climbing stairs and needed to use the handrail to do so; and that she could grocery shop alone only if using a motorized cart with a seat not credible.[14] (Tr. 31-32, 36, 43, 47-49).

This would be inappropriate in this case, however. First, in assessing Plaintiff's credibility, the ALJ did not specifically mention Plaintiff's testimony that she was limited in her ability to walk, noting instead other activities that Plaintiff had testified she was able to do. Therefore, it is not clear what weight he gave to Plaintiff's testimony regarding her ability to walk. In addition, in finding that Plaintiff's testimony as to her limitations was not credible, the ALJ relied solely on the facts that she could perform certain activities around her home and was the guardian of her grandchild. In *Moss v. Astrue*, the Court of Appeals held that the ALJ's reliance on the claimant's household activities in finding that she did not meet Listing 1.03 was error where he failed to consider the claimant's testimony

---

[14] Each of these directly relates to the examples of ineffective ambulation listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(B)(2)(b)(2).

regarding the limits she experienced in her ability to perform these activities. 555 F.3d 556, 562 (7th Cir. 2009). Similarly, Plaintiff testified to a number of limitations on her performance of household activities, which the ALJ did not consider.[15] (Tr. 31, 35-36, 40, 45-47). In discounting Plaintiff's testimony, the ALJ also relied on Plaintiff's guardianship of her granddaughter, but did not mention Plaintiff's testimony that the child's mother lives in Plaintiff's home with her and assists in the child's care. (Tr. 36-37). Because the ALJ's credibility finding does not reliably show that he would have made the same decision even if he had considered Dr. Norbury's opinion, the Court finds that it cannot be relied on in finding the ALJ's legal error harmless.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 7) is GRANTED IN PART, and Defendant's Motion for Summary Affirmance (Doc. 9) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. The Commissioner's decision is REVERSED with respect to the decision that Plaintiff's impairments do not meet the requirements of Listing 1.03. This matter is REMANDED to the

---

[15] Indeed, *Moss* is very like the instant case. The ALJ there failed to consider the weight to be given to a physician's opinion under the regulations and improperly relied on the claimant's activities at home, while ignoring her statements concerning the limitations on her home activities caused by pain, in finding that she did not meet Listing 1.03. *Moss*, 555 F.3d at 561-62. The *Moss* claimant used only one cane, and testified that she occasionally walked in her driveway for exercise, but the Court of Appeals remanded the case to the agency because the ALJ had "failed to adequately consider whether Moss in fact meets the listing based on the provided examples such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking." *Id*. at 562.

Commissioner of Social Security for the purpose of determining, with proper evaluation of the medical opinion evidence of record, whether Plaintiff's impairments meet the requirements of Listing 1.03. If the Commissioner again finds that Plaintiff's impairments do not meet the requirements of Listing 1.03, he must proceed through the remainder of the sequential process in order to determine whether Plaintiff is entitled to disability benefits.

Entered this <u>3rd</u> day of March, 2010.

                                                             s/ Joe B. McDade
                                                    JOE BILLY McDADE
                                    United States Senior District Judge